

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 4, 2021**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| MARGIE VANZANDT EDWARDS, | § | Case No.: 20-20178-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| MOBILIZATION FUNDING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 21-02002 |
| | § | |
| MARGIE VANZANDT EDWARDS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

This adversary proceeding arises out of the chapter 7 bankruptcy of defendant Margie VanZandt Edwards. Edwards moves to dismiss the First Amended Complaint ("Complaint") [ECF No. 28] of plaintiff Mobilization Funding, LLC.[1] The following facts are based solely on the allegations of the Complaint for the Court "must limit itself to the contents of the pleadings,

---

[1] "ECF No." refers to a docket entry of the adversary proceeding, Adv. No. 21-02002.

1

including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

## I.

Margie Edwards and other members of the Edwards family owned a series of mail service companies. The other involved family members are Lawrence Edwards, her husband; Charles Edwards, her son; and Tracey Edwards, her daughter-in-law. The Lawrence and Margie Edwards' Grandchildren's Trust ("Trust"), settled by Margie Edwards and Lawrence Edwards with Charles Edwards as trustee, also shared ownership of the companies with the family. The family and the Trust collectively owned Le-Mar Holdings, Inc. ("Le-Mar"), Edwards Mail Service, Inc. ("EMS"), and Taurean East, LLC ("Taurean"), with each family member and the Trust sharing ownership of each company in varying amounts.

**The Notes**

On April 1, 2011, Margie Edwards and Lawrence Edwards were issued two promissory notes as payees on stock sales. First, they sold 100 shares of Le-Mar stock to Charles Edwards and Tracey Edwards, who, in return, signed a note for $225,000 ("Initial Note"), payable in 120 installments with a final payment due on May 1, 2021. Second, they sold 603 shares of Le-Mar stock back to Le-Mar, which, in return, signed a note for $1,356,750 ("Stock Note"), payable in 240 installments with a final payment due on May 1, 2031. While Le-Mar made regular payments on the Stock Note, Charles Edwards and Tracey Edwards made no payments on the Initial Note.

**The Loans**

In 2017, Mobilization made four loans to Le-Mar, EMS, and the Trust. Each loan was guaranteed by various members of the Edwards family and the Trust. The third loan, made on

August 1, 2017, in the principal amount of $3,377,751.68 ("Third Loan"), and the fourth loan on August 15, 2017, in the principal amount of $634,920.63 ("Fourth Loan"), were personally guaranteed by Margie Edwards, along with Lawrence Edwards, Charles Edwards, Tracey Edwards, and Taurean through an amendment to the Third Loan. Compl., Ex. O.

On August 16, 2017, Margie Edwards signed two documents to guarantee the Third and Fourth Loans: (1) the First Amendment to the Third Loan ("First Amendment") and (2) the Margie Edwards Guaranty ("Guaranty").[2] On October 8, 2020, during a rule 2004 examination, Margie Edwards testified that she was eating at a Mexican restaurant when she signed the First Amendment and that she did not understand that she was personally guaranteeing the loans made by Mobilization. She also testified that she did not recall signing the Guaranty.

On December 21, 2020, Mobilization conducted a Rule 2004 examination of Kelly Sistos, a former employee of EMS and a Texas Notary Public. Sistos notarized Margie Edwards's signature on both the First Amendment and the Guaranty. Sistos testified that she believed she was present when Margie Edwards signed the First Amendment, but admits it was possible she was not present, and could not explain why Margie Edwards testified she only signed one document when Sistos had notarized Margie Edwards's signature on both, the First Amendment and the Guaranty. Sistos also testified that she had notarized the signature of Tracey Edwards for a loan from Mobilization when she knew the signature was not Tracey Edwards's.

---

[2] While the First Amendment is attached to the Complaint as Exhibit O and contains Margie Edwards's signature, the Guaranty is not attached. Mobilization asserts that Margie Edwards additionally signed what it refers to as a "second amendment" on August 30, 2017 in connection with the Fourth Loan, but such document is also not attached as an exhibit.

3

**The Bankruptcies**

On September 17, 2017, Le-Mar, EMS, and Taurean filed voluntary chapter 11 bankruptcy petitions. These cases were converted to chapter 7 in late June 2019. Lawrence Edwards filed chapter 7 bankruptcy on March 26, 2019. He omitted from his bankruptcy schedules any claims he had against Charles Edwards and Tracey Edwards, including a claim on the Initial Note, and the debt *he owed to* Mobilization. He received his bankruptcy discharge on July 17, 2019. Mobilization was not notified of Lawrence Edwards's bankruptcy and did not learn of it until after it sued Edwards in state court to recover on his various guarantees of Mobilization's loans. On May 29, 2019, Charles Edwards and Tracey Edwards filed their joint chapter 7 bankruptcy petition. They scheduled the debt they owed to Mobilization but not the debt owed to Margie Edwards and Lawrence Edwards on the Initial Note.

On June 11, 2020, Margie Edwards filed this bankruptcy petition. She scheduled the debt owed to Mobilization but omitted any claim against Charles Edwards and Tracey Edwards on the Initial Note or against Le-Mar on the Stock Note.

**II.**

**General Pleading Standard**

Margie Edwards moves to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7012). To avoid dismissal, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7008). "Though the complaint need not contain 'detailed factual allegations,' it must contain sufficient factual material that, accepted as true, 'allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged.'" *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### Heightened Pleading Standard for Fraud

When fraud is alleged in a pleading, the standard for surviving a motion to dismiss is raised, and "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Thomas v. Abebe*, 833 F. App'x 551, 554 (5th Cir. 2020) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark*, 343 F.3d at 724).

### Deference and Content of Review

In reviewing the Complaint, the Court must "draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). Furthermore, the Court "must limit itself to the contents of the pleadings, including attachments thereto." *Collins*, 224 F.3d at 498.

III.

**Count I – 11 U.S.C. § 523(a)(2)(A)**

A debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" is not discharged in bankruptcy. 11 U.S.C. § 523(a)(2)(A). While Mobilization's Complaint does not specify which basis it relies on for discharge—false pretenses, a false representation, or actual fraud—it refers to actual fraud in its Response to Defendant's Second Motion to Dismiss ("Response") [ECF No. 39].

> The elements of "actual fraud" under § 523(a)(2)(A) generally correspond with the elements of common law fraud in Texas, and include: (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result.

*Saenz v. Gomez*, 899 F.3d 384, 394 (5th Cir. 2018) (citing *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001)). Because 11 U.S.C. § 523(a)(2)(A) is a claim of deceit and fraud, the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure applies.

Taking the assertions of the Complaint as true, Mobilization has stated on the face of its Complaint that Margie Edwards made a representation and knew that representation was false. Margie Edwards represented that she "had the opportunity to review the [Third Loan] and all other Loan Documents dated August 1, 2017 in full" and entered the agreement "freely and voluntarily." Compl., Ex. O. Mobilization further says that Margie Edwards's representation was false, for she later said that she "did not know the purpose of the papers [and] … denied that she understood that she was personally guaranteeing the debt." Compl. ¶ 76; *see also generally* Compl. ¶¶ 75–79. These facts together are technically sufficient to provide a facial showing that

she made a representation that she knew to be false. (The Court notes, however, that the referenced documents are technical, complicated, and laden with defined terms and legalese.)

Mobilization's Complaint satisfies the intent element. Mobilization asserts that Margie Edwards "knowingly and fraudulently made such false and fraudulent representations with the intention and purpose of deceiving Plaintiff." Compl. ¶ 94. "[I]ntent … may be alleged generally," Fed. R. Civ. P. 9(b), "excus[ing] a party from pleading discriminatory intent under an elevated pleading standard." *Iqbal*, 556 U.S. at 686. Based on this rule, and because "the *fact* of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent," *Clontech Lab'ys, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (emphasis in original) (citation omitted), this statement by Mobilization, read alongside its assertions of Margie Edwards's knowingly false representation, is sufficient to meet the element of intent.

Mobilization has also made a showing of reliance. Mobilization says that it "relied on the false and fraudulent loan documents," Compl. ¶ 93, and contends that it has met the element of reliance in the Complaint because "asking a new guarantor to account for existing debt is a transaction that a creditor would enter into only if the new guarantor was sufficiently aware of the existence and nature of the prior debt." Resp. ¶ 12. Because this Court may "draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, it may accept this inference in determining whether the element of reliance has been adequately pleaded.

Finally, Mobilization has alleged damages. Mobilization says that it "has been damaged by the Debtor's false representations," Compl. ¶ 95, and argues that it "is subject to defenses that it did not bargain for in holding [Margie Edwards] to her personal guaranty of this debt." Resp. ¶ 12.

Mobilization's Complaint has thus made a sufficient, though bare, showing of the elements of actual fraud and has laid out "the who, what, when, where, and how" of Margie Edwards's allegedly fraudulent representation. *Shandong*, 607 F.3d at 1032. Mobilization has passably pleaded the necessary elements of a claim under 11 U.S.C. § 523(a)(2)(A) to avoid dismissal.

### Count II – 11 U.S.C. § 727(a)(4)

A debtor's discharge of *all* debts is denied if:

> the debtor knowingly and fraudulently, in or in connection with the case—
> (A) made a false oath or account;
> (B) presented or used a false claim;
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

11 U.S.C. § 727(a)(4). Because 11 U.S.C. § 727(a)(4) is a claim of deceit and fraud, the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure applies.

Taking the assertions of the Complaint as true, Mobilization has shown sufficient facts to state a claim under § 727(a)(4). Mobilization says that Margie Edwards's bankruptcy omits multiple claims that she has against the other Edwards family members and their corporations. Margie Edwards's bankruptcy schedules do not include claims against Charles Edwards, Tracey Edwards, and Le-Mar under the Initial Note and the Stock Note; she also omitted her interest in the Trust. *See* Compl. ¶¶ 13, 22, 24, 73, 87, 100. The allegation of these omissions is sufficient for a showing of a violation of any of subsections (A), (C), or (D) of 11 U.S.C. § 727(a)(4).

Margie Edwards correctly points out that the Complaint also reveals that Charles Edwards and Tracey Edwards had already filed bankruptcy and received a discharge of their

claims before Margie Edwards filed bankruptcy—Second Motion To Dismiss Pursuant to Rules 7009 and 7012(b) ("Mot. to Dismiss") ¶¶ 12–13 [ECF No. 36]; *see also* Compl. ¶¶ 67–73—presumably rendering Margie's claims against Charles and Tracey Edwards worthless. Margie Edwards also notes Le-Mar's bankruptcy filing and conversion to chapter 7. Mot. to Dismiss ¶ 15; *see also* Compl. ¶¶ 52, 57. While the omitted claims may be worthless and thus not rise to the level of materiality required for a § 727 denial of discharge, that is not certain from the face of the Complaint, and the Court must "draw all inferences in favor of the nonmoving party." *McLin*, 866 F.3d at 688. "The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding[.] . . . Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them." *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992) (quoting *In re Chalik*, 748 F.2d 616, 617 (11th Cir. 1984)).

**Count III – 11 U.S.C. § 727(a)(5)**

A debtor is denied a discharge of all debts if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). "[A] plaintiff need not plead with the particularity required for allegations of fraud under Federal Rule of Bankruptcy Procedure 7009. Nevertheless, the plaintiff must still identify particular assets which have been lost." 6 *Collier on Bankruptcy* ¶ 727.08.

> Under § 727(a)(5) an objecting party bears the initial burden of proof and must demonstrate: (1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets.

9

*In re Theiss*, No. 08–3458-H5-7, 2011 WL 841081, at *13 (Bankr. S.D. Tex. Mar. 7, 2011) (quoting *In re Retz*, 606 F.3d 1189, 1205 (9th Cir. 2010)).

Mobilization goes too far in saying that "dismissal under the 12(b)-standard would be incongruous for a §727(a)(5) claim, because the statute expressly places an affirmative burden <u>on the Debtor</u> to satisfactorily explain any non-standard loss or depletion of assets." Resp. ¶ 24 (emphasis in original). While it is true that a debtor bears the burden of explaining a loss of assets, this does not mean a creditor is automatically safe from dismissal on a § 727(a)(5) claim. A creditor must still adequately plead the elements of § 727(a)(5) to avoid dismissal, and courts dismiss § 727(a)(5) claims when appropriate. *Brush v. Franco (In re Franco)*, No. 20-06067-LRC, 2020 WL 4492243, at *2–4 (Bankr. N.D. Ga. Aug. 3, 2020); *Hazelrigg v. U.S. Trustee (In re Hazelrigg)*, No. WW-13-1230-TaDJu, 2013 WL 6154102, at *7–8 (B.A.P. 9th Cir. Nov. 19, 2003); *Olson v. Potter (In re Potter)*, 88 B.R. 843 (Bankr. N.D. Ill. 1988). Therefore, the Court carefully considers the arguments of the parties and Mobilization's pleadings to determine if dismissal is appropriate in this case.

Margie Edwards argues that Count III should be dismissed because Mobilization "has failed to assert by pleadings and factual support that *prior to the complaint* it made a demand for an explanation for a loss or deficiency of an asset." Reply to Pl.'s Resp. ¶ 11 [ECF No. 41] (emphasis in original). This statement by Mobilization is true; however, section 727(a)(5) reveals no requirement on its face that a demand for an explanation be made prior to pleading, and caselaw suggests that the pleadings must assert only that "the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets." *In re Theiss*, 2011 WL 841081, at *13. Mobilization's pleadings make such an assertion, Compl. ¶ 104, and also show Margie Edwards owned identifiable assets, Compl. ¶¶ 21–24, and that, at

filing, she no longer owned those assets, Compl. ¶104. Thus, Mobilization has pleaded the necessary elements of § 727(a)(5); that Mobilization failed to plead that it made a demand for an explanation prior to filing the Complaint does not warrant dismissal of Count III.

**Conspiracy**

Margie Edwards asserts that Mobilization's conspiracy charge should be dismissed because it fails to adequately plead the Texas common law elements of conspiracy. Reply ¶¶ 5–6. While Mobilization makes a vague allegation of a conspiracy in the Complaint, Compl. ¶¶ 86–87, 92, such allegation does not allege a particular cause of action, nor is it relied upon for any of Mobilization's enumerated claims. For this reason, no counts of the Complaint should be dismissed on account of a failure to plead the common law elements of conspiracy.

### IV.

Mobilization's Complaint adequately pleads Count I, Count II, and Count III. The Court makes no ruling concerning a conspiracy claim, finding no such claim is raised by Mobilization. The motion to dismiss will be denied. The Court will prepare an order.

### End of Memorandum Opinion ###